UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-21577 CIV-GOLD/Magistrate Judge Turnoff

AMERICAN CIVIL LIBERTIES UNION )
OF FLORIDA, INC., GREATER MIAMI )
CHAPTER; MIAMI-DADE COUNTY )
STUDENT GOVERNMENT )
ASSOCIATION, )
                                )
    Plaintiffs,                 )
                                )
v.                              )
                                )
MIAMI-DADE COUNTY SCHOOL        )
BOARD; RUDOLPH F. CREW, in his  )
official capacity as Superintendent of )
Schools, Miami-Dade County Public )
Schools,                        )
                                )
    Defendants.                 )
_____)



MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION
FOR A TEMPORARY RESTRAINING ORDER

FACTS

Plaintiffs American Civil Liberties Union of Florida, Inc., Greater Miami Chapter ("ACLU") and the Miami-Dade County Student Government Association ("Association") filed this action on June 21, 2006 seeking declaratory and injunctive relief against the June 14, 2006 Order of Defendant Miami-Dade County School Board ("School Board") requiring that the children's book *¡Vamos a Cuba!* and the entire series of books of which it is a part, be removed throughout all libraries in the Miami-Dade County School District. A copy of the School Board's Order is attached hereto as Exhibit A. Plaintiffs now seek an emergency temporary restraining order to prevent the Defendant



School Board and Defendant Rudolph F. Crew, Superintendent of Schools, and all persons acting in concert with them, from irreparably injuring Plaintiffs by acting on this Order and removing the books until such time as the Court has an opportunity to consider the merits of Plaintiffs' claim for preliminary injunctive relief.

While Plaintiffs have not had opportunity to conduct discovery in this case, there is ample evidence in the public records of the School Board's consideration of the removal of these books suggesting that:

- The School Board decided to remove the books about Cuba because some members of the community and the School Board found the contents of those books offensive,[1] despite the fact that the books about Cuba were extensively reviewed by professional educators in the school system's internal review process and determined to be educationally appropriate.[2]

- The School Board did not follow its own administrative process when it ordered the removal of all the books in the series of which ¡Vamos a Cuba! is a part. No complaint had been filed about the other books in the series, and those books had not been subject to the administrative review process.[3]

---

[1] See, e.g., Revised Agenda Item B-19, April 18, 2006, Exhibit B; Replacement Agenda Item B-13 (June 7, 2006), Exhibit C; May 22, 2006 Memorandum from Rudolph F. Crew to Antoinette Dunbar, Deputy Superintendent, Exhibit D.

[2] SMRC Final Recommendation and Related Documents, April 21, 2006, Exhibit E; DMRC Final Recommendation and Related Documents, June 7, 2006, Exhibit F.

[3] School Board Rule 6Gx13-6A-1.26, Exhibit G; Memorandum from School Board Attorney, June 7, 2006, Exhibit H.

Although the School Board's Order does not contain any specific time frame for removal of the books,[4] the School Board's meeting minutes reflect that the Board resolved to "*immediately* replace [all the books in the series] with updated books that are more actual to real life in these countries." Unofficial Meeting Minutes of the June 14, 2006 Board Meeting, Agenda Item G-3, available at: http://pdfs.dadeschools.net/Bdarch/2006/Bd061406/lastbda.asp (emphasis supplied), attached hereto as Exhibit I. Although the next academic year commences August 14, summer school has commenced for selected students[5] and despite request by counsel for the Plaintiffs, the School Board Attorney has represented that she cannot provide any assurance that Defendants will refrain from removing the books before this Court can hold a hearing and determine the merits of Plaintiffs' request for preliminary injunctive relief. Declaration of JoNel Newman, attached hereto as Exhibit L.

---

[4] The Order states in its entirety:

Upon a review of the complete Record of the proceedings below, including the transcript of the proceedings on Board Agenda Item G-3 (incorporated herein by reference and attached hereto, and made a part of this Final Order), the Superintendent's recommendation sustaining the District Materials Review Committee's decision is hereby rejected. The foregoing is based upon the findings reflected by the record of these proceedings, and more specifically the finding that the book is inaccurate and contains several omissions. It is further ordered that this book and the series it is part of, be replaced, throughout the school district, with a more accurate set of books that is more representative of actual life in these countries.

Final Order of the School Board of Miami-Dade County, Florida, June 14, 2006, Exhibit A.

[5] Miami-Dade County Public School Calendar, attached hereto as Exhibit J, and Elementary Grade Reporting and Fall Processing Calendar January 2006-August 2006, attached hereto as Exhibit K.

The books that are the subject of the School Board's Order are available to any student who attends any of the 33 middle and elementary schools, as well as to students who attend any other Miami-Dade County Public School through the inter-library system loan program. Plaintiff Association represents students who attend Miami-Dade County Public Schools and who want to have access to the books the School Board ordered removed from the libraries. Declaration of Ronald Bilbao, attached hereto as Exhibit M. In the event that the books are removed from the school libraries across Dade County, those individuals will be irreparably injured. *Id.*

## ARGUMENT

"A TRO or preliminary injunction is appropriate where the movant demonstrates that:

(a) there is a substantial likelihood of success on the merits;

(b) the preliminary injunction is necessary to prevent irreparable injury;

(c) the threatened injury outweighs the harm that the preliminary injunction would cause to the non-movant; and

(d) the TRO or preliminary injunction would not be averse to the public interest."

*Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034-5 (11th Cir. 2001) (citing *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985)). Based on the irreparable harm threatened by the Defendants' imminent violation of First and Fourteenth Amendment rights Plaintiffs satisfy all of these requirements and are entitled to immediate injunctive relief until the Court can hold a hearing and consider the merits of their request for preliminary injunctive relief.

A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

1. Plaintiffs Are Likely to Succeed on Their First Amendment Claims.

Students in public schools enjoy the guarantees of the First Amendment to the U.S. Constitution.[6] *See Tinker v. Des Moines School District*, 393 U.S. 503, 506 (1969) ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."). That right extends to school libraries. *Board of Education v. Pico*, 457 U.S. 853, 868 (1982). In *Pico*, the Supreme Court held that "the First Amendment rights of students may be directly and sharply implicated by the removal of books from the shelves of a school library." *Id.* at 867. The Court recognized two important aspects to the application of the First Amendment to school libraries – students' rights to free access to information and ideas, and the obligation of the school board, acting as the "State" to refrain from contracting "the spectrum of available knowledge." *Id.* at 867-868.

*Pico* and the progeny of cases following it make clear that local school boards may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to prescribe what shall be orthodox in politics, nationalism, religion or other matters of opinion. *Id* at 872 (plurality opinion)(citations and quotes omitted).[7] Removing

---

[6] The First Amendment applies to state and local governmental officials under the Due Process Clause of the Fourteenth Amendment. *See Board of Ed., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 855, n. 1 (1982), and cases cited therein.

[7] *See also*: *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995); *Case v. Unified School District*, 895 F.Supp. 1463 (D. Ks. 1995); *Minarcini v. Strongsville City School Dist.*, 541 F.2d 577 (6th Cir.1976) (removal of books because school board found them distasteful was unconstitutional); *Delcarpio v. St. Tammany Parish School Board*, 865 F.Supp. 350 (E.D. La.1994) (removal of book because ideas conveyed in book were not consistent with board members' values, concepts of morality, or religious beliefs was unconstitutional); *Roberts v. Madigan*, 702 F.Supp. 1505 (D. Colo.1989), *aff'd,* 921 F.2d 1047 (10th Cir.1990), *cert. denied,* 505 U.S. 1218 (1992)

or banning a book from Miami-Dade public school libraries because some individuals, including school board members, find the content of the book offensive and insulting violates the First Amendment.

2.   Plaintiffs Are Likely to Succeed on Their Due Process Claims.

It is axiomatic that administrative agencies must follow their own administrative procedures. *Morton v. Ruiz,* 415 U.S. 199, 233-235 (1974). Once a school board has adopted rules or guidelines governing the removal of library materials "the Board [is] required to follow them." *Salvail v. Nashua Bd. of Ed.,* 469 F.Supp. 1269, 1273 (D. N.H. 1979). School board decisions about removal of books from libraries requires "careful delineation and observance of 'due process' standards and procedures." *Sheck v. Baileyville School Committee,* 530 F.Supp. 679, 690 (D. Maine 1982).

In this case the School Board deviated from its own procedures in banning the Cuba books from *all* libraries in the School District when the administrative procedure involved only one school and one library, and, even more egregiously, in banning all the books in the series when no complaint had ever been filed about those books and there was no administrative review of the other books in the series. Memorandum of School Board Attorney, June 7, 2006 at 4-5 & n.6, Exhibit H.

---

(citing *Pico,* the district court held that removal of the Bible from school library was unconstitutional); *Sheck v. Baileyville School Committee,* 530 F.Supp. 679 (D. Me.1982)(students and parents entitled to preliminary injunction against school committee for banning of entire book for its "objectionable" language); *Salvail v. Nashua Bd. of Educ.,* 469 F.Supp. 1269 (D. N.H.1979)(removal of Ms. magazine for "political" content was unconstitutional); *Right to Read Defense Committee of Chelsea v. School Committee,* 454 F.Supp. 703 (D. Mass.1978)(act of school committee in removing book containing poem which included harsh but not obscene language infringed upon First Amendment rights of students and faculty).

Thus, plaintiffs are substantially likely to succeed on the merits of their claims.

B.    PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT THE REQUESTED EQUITABLE RELIEF.

Plaintiffs in this case seek to vindicate First and Fourteenth Amendment rights, rights that rank among the most fundamental in our society. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Applying this concept to school libraries, a District Court recently determined that even the minimal burden of requiring parental permission before a student could check out "Harry Potter" books (of which she had copies at home) unconstitutionally and irreparably burdened the student's First Amendment rights. *Counts v. Cedarville School Dist.*, 295 F.Supp. 996, 999 (W.D.Ark. 2003). As the court in *Brooklyn Inst. of Arts & Sciences v. City of New York*, 64 F. Supp. 2d 184, 197 (E.D. N.Y. 1999), stated, "it is sometimes said that 'when an injunction is sought to protect First Amendment rights, likelihood of success on the merits and irreparable harm merge into a single threshold requirement.'" Other courts considering removal of library books have granted injunctive relief under similar circumstances. *See, e.g., Sheck, supra* (granting preliminary injunctive relief to restore book to school library pending decision on the merits); *Sund v. City of Wichita Falls*, 121 F.Supp.2d 530, 535 (N.D. Tex. 2000) (temporary injunction returning books of gay and lesbian theme to children's section of public library pending final resolution of case and award of permanent injunction by Court).

Unless this Court enjoins defendants, plaintiffs will be denied fundamental rights under the First and Fourteenth Amendments as a result of the Board's action. The deprivation of those rights is irreparable.

C. A PRELIMINARY INJUNCTION WOULD NOT HARM DEFENDANTS AND WOULD SERVE THE PUBLIC INTEREST.

Unlike the threatened injury to Plaintiffs - who risk losing fundamental constitutional rights - the potential harm a temporary restraining order would cause defendant is trivial. *¡Vamos a Cuba!* and the other books in the series have been in the School District's libraries for years. Requiring the District to leave the books in its libraries pending the opportunity for Plaintiffs to present their claims for preliminary injunctive relief imposes a *de minimis* burden on Defendants.

The public interest also is clearly advanced by granting the requested equitable relief. The public interest weighs strongly in favor of ensuring that First Amendment and Fourteenth Amendment rights are not curtailed. Granting temporary relief will benefit the public interest because it will vindicate fundamental constitutional rights. *Sheck, supra*, 530 F.Supp. at 693. There is no harm to the public interest in requiring Defendants to comply with clearly established constitutional principles. *See* Memorandum of School Board Attorney, Exhibit H at 4-8. In contrast, Defendants have no interest in abridging Plaintiffs' First and Fourteenth Amendment rights by removing the books.

D. NO BOND SHOULD BE REQUIRED.

Plaintiff requests that he not be required to post any cash bond. In spite of the literal language of Fed.R.Civ.P. 65 (c), this Court clearly has the discretion to issue an injunction without requiring plaintiff to give security. *See, e.g., Caterpillar, Inc. v. Nationwide Equipment*, 877 F.Supp. 611, 617 (M.D. Fla. 1994); *Baldree v. Cargill, Inc.*, 758 F.Supp. 704 (M.D. Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991).

Because Plaintiffs seek only to vindicate their fundamental rights under the First and

Fourteenth Amendments, this case implicates the public interest and the balance of hardships tips sharply in favor of plaintiffs. Defendants will suffer no monetary harm and will be required only to take no action by simply leaving the books on library shelves where they have been for a lengthy period of time. Therefore this Court should not require plaintiff to give security. *See Pharmaceutical Soc'y of N.Y. v. Dep't of Soc. Serv.*, 50 F.3d 1168, 1174 (2d Cir. 1995); *Crowley v. Local 82 Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehouseman and Packers*, 679 F.2d 978, 999 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984).

## Conclusion.

For the foregoing reasons, Plaintiffs' request for emergency relief should be granted. This Court should order Defendants and those acting in concert with them to refrain from taking any action to remove ¡*Vamos a Cuba!* and the series of books of which it is a part from the District's libraries until this Court has an opportunity to hold a hearing and consider and determine Plaintiffs' request for preliminary injunctive relief.

Respectfully submitted,

Randall Marshall
Florida Bar No. 181765
Rosalind Matos
Florida Bar No. 474967
ACLU Foundation of Florida, Inc.
4500 Biscayne Boulevard, Suite 340
Miami, FL 33137-3227
Florida Bar No: 181765
rmarshall@aclufl.org
(786) 363-2700
(786) 363-1108 (facsimile)

JoNel Newman
Florida Bar. No. 112320

University of Miami School of Law
1311 Miller Drive
Coral Gables, FL 33146
(305) 284-4125
(305) 284-1588 (facsimile)
jnewman@law.miami.edu
Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.

Attorneys for Plaintiff

By: _____
JoNel Newman
Florida Bar. No. 112320

CERTIFICATE OF SERVICE

 **I hereby certify** that a true and correct copy of the foregoing document was served by facsimile + US mail on June 27, 2006 on all counsel or parties of record on the attached service list.

_____
JoNel Newman
Florida Bar. No. 112320

## SERVICE LIST

### Case No. 06-21577 CIV-GOLD/Turnoff

JulieAnn Rico, Esq.
Luis Garcia, Esq.
Office of the Miami-Dade County School Board Attorney
School Board Administration Building, Suite 400
1450 NE 2nd Avenue
Miami, FL 33132
305-995-1412 (facsimile)

Attorneys for Defendants Miami-Dade County School Board and
Rudolph F. Crew, Superintendent of Schools


Randall Marshall, Esq.
Rosalind Matos, Esq.
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard, Suite 340
Miami, FL 33137-3227
rmarshall@aclufl.org
(786) 363-2700
(786) 363-1108 (facsimile)

JoNel Newman, Esq.
University of Miami School of Law
1311 Miller Drive
Coral Gables, FL 33146
(305) 284-4125
(305) 284-1588 (facsimile)
jnewman@law.miami.edu
Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# ATTACHMENT(S) NOT SCANNED

## PLEASE REFER TO COURT FILE MAINTAINED IN THE OFFICE WHERE THE JUDGE IS CHAMBERED

## CASE NO. 06-21577-CIV-ASG
## DE#8

☐ **DUE TO POOR QUALITY, THE ATTACHED DOCUMENT IS NOT SCANNED**

_____

☐ VOLUMINOUS (exceeds 999 pages = 4 inches)
    consisting of (boxes, notebooks, etc.)_____
☐ BOUND EXTRADITION PAPERS
☐ ADMINISTRATIVE RECORD (Social Security)
☐ ORIGINAL BANKRUPTCY TRANSCRIPT
☐ STATE COURT RECORD (Habeas Cases)
☐ SOUTHERN DISTRICT TRANSCRIPTS
☐ LEGAL SIZE
☐ DOUBLE SIDED
☐ PHOTOGRAPHS
X POOR QUALITY (e.g. light print, dark print, etc.)
☐ SURETY BOND (original or letter of undertaking)
☐ CD's, DVD's, VHS Tapes, Cassette Tapes
☐ OTHER = _____