Jul 11 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-CIV-21577-Gold/Turnoff

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC., GREATER MIAMI CHAPTER; MIAMI-DADE COUNTY STUDENT GOVERNMENT ASSOCIATION, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MIAMI-DADE COUNTY SCHOOL BOARD; RUDOLPH F. CREW, in his official capacity as Superintendent of Schools, Miami-Dade County Public Schools, | ) ) ) ) ) ) |
| Defendants. | ) ) |

PLAINTIFFS' MEMORANDUM ON ORGANIZATIONAL STANDING

Pursuant to the Court's July 6, 2006 Order Requiring Supplemental Briefing on Standing Issue (Doc. #16), plaintiffs submit this Memorandum on Organizational Standing. All exhibits referred to herein were submitted to the Court in support of plaintiffs' Motion for Preliminary Injunction and were filed July 7, 2006.

The plaintiffs are two organizations that bring this action not on behalf of their individual organization, but on behalf of their members or those individuals whom they serve. The American Civil Liberties Union of Florida, Inc., Greater Miami Chapter ("ACLU"), asserts the interests of its Miami-Dade County members who have children in the Miami-Dade Public Schools. The Miami-Dade County Student Government Association asserts the interests of its members – students in

Miami-Dade Public Schools. Both of these organizations have standing to bring this action under well established law. *See*, *e.g.*, *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999)("It has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing.").

I.   THE ACLU OF FLORIDA, INC., HAS STANDING TO BRING THIS ACTION.

The ACLU is the Florida affiliate of the national American Civil Liberties Union. The ACLU is a statewide, nonprofit, nonpartisan organization dedicated to defending principles of liberty embodied in the State and Federal Constitutions. The ACLU has long defended the First Amendment not only by representing individuals in First Amendment litigation but also by acting as a plaintiff on behalf of its members interests. The ACLU has approximately 3500 members in Miami-Dade County, including many parents of children in elementary and middle schools. *See* Declaration of Dr. Howard L. Simon, Exhibit 26, ¶8. The ACLU asserts the rights of its Miami-Dade County parents and their children in this action.

The Supreme Court has firmly held that organizations like the ACLU have standing to assert the rights of their members. In general, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343 (1977).

As emphasized by the Eleventh Circuit, "[t]hese are the sole requirements. Accordingly, under *Hunt*, an association may bring suit on behalf of its members or constituents despite the fact

2

that individual members have not actually brought suit themselves. Nor must the association name the members on whose behalf suit is brought. As we have stated, 'neither unusual circumstances, inability of individual members to assert rights nor an explicit statement of representation are requisites.'"[1] *Doe v. Stincer*, 175 F.3d at 882 (citing *Church of Scientology v. Cazares*, 638 F.2d 1272, 1279 (5th Cir.1981)).[2]

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members. ... The association must allege that its members, <u>or any one of them</u>, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Warth v. Seldin*, 422 U.S. 490, 511 (1975)(emphasis added). The ACLU easily meets this test of associational standing.

---

[1] The Eleventh Circuit drove this point home in rejecting any requirement that a specific individual harmed be named by the organization:

> Moreover, under Article III's established doctrines of representational standing, we have never held that a party suing as a representative must specifically name the individual on whose behalf the suit is brought ... . *See Cazares*, 638 F.2d at 1278 ("[T]he requisite for representational standing ... is not necessarily an explicit statement of representation but a close nexus between the organization and its members and an allegation of injury to its members as a result of the action") (citations omitted); *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 102 (5th Cir.1963)(upholding right of civil rights organization to assert the constitutional rights of its members despite the fact that pleadings did not seek relief on behalf of any specific member). As these cases hold, it is enough for the representative entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right.

*Doe v. Stincer*, 175 F.3d at 884-5.

[2] Decisions of the former Fifth Circuit decided prior to September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir.1981)(*en banc*).

3

A. THE ACLU'S MEMBERS WOULD HAVE STANDING TO SUE IN THEIR OWN RIGHT.

The ACLU meets the first prong of *Hunt* because (1) students in the Miami-Dade County Public Schools clearly have standing to challenge the Board's action;[3] (2) any parent of a child in the Miami-Dade County School District has standing to challenge the removal of the books on behalf of his or her child,[4] and (3) the ACLU has approximately 3,500 members in Miami-Dade

---

[3] Standing requires an injury-in-fact which is caused by, or is fairly traceable to, the defendant's alleged unlawful conduct, which may be redressed by a favorable opinion. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For the reasons set forth in plaintiffs' Memorandum in Support of Emergency Motion for Temporary Restraining Order (Doc. #8) and Supplemental Memorandum in Support of Motion for Preliminary Injunction (filed July 7), the challenged School Board's action deprived students of established constitutional rights. That deprivation may be remedied by a favorable opinion and order placing the book series back into the District's libraries. *See*, *e.g.*, *Case v. Unified School District*, 895 F.Supp. 1463, 1468 (D. Kan. 1995) (holding that where students and parents of students who previously had access to a book removed from the school library sued for First Amendment violations, "Injunctive and declaratory relief would redress that injury because access to the book from the school library would be restored," and therefore parents and students had standing). *See also* footnote 4, *infra*, which includes several cases in which students brought action against school districts for banning books, magazines, or films.

[4] *See, e.g.*: *Board of Education v. Pico*, 457 U.S. 853 (1982)(challenge to removal of books brought by students); *Campbell v. St. Tammany Parish School Bd.*, 64 F.3d 184, 187 (5th Cir. 1995)(parents of children challenged school board's removal of library book as violative of their children's First Amendment rights); *Pratt v. Independent School District*, 670 F.2d 771 (8th Cir. 1982)(challenge to film ban brought by parents, as next friend, of students); *Minarcini v. Strongsville City School District*, 541 F.2d 577, 582 (6th Cir.1976)(challenge to book removal brought by parents, as next friend, of students); *Sheck v. Baileyville School Committee,* 530 F.Supp. 679, 681 (D. Maine 1982)(students and parents of students challenged removal of school library book); *Counts v. Cedarville School District*, 295 F.Supp.2d 996 (W.D. Ark. 2003)(parents, on behalf of student, have standing to challenge book restrictions); *Salvail v. Nashua Bd. of Educ.*, 469 F.Supp. 1269 (D. N.H.1979)(class action with student subclasses proper parties to challenge removal of magazine from school library); *Right to Read Defense Committee of Chelsea v. School Committee*, 454 F.Supp. 703, 705 (D. Mass.1978)(students and committee formed at the time of the challenged book removal had standing).

Parent members of the ACLU of Florida are authorized to represent their children in litigation. Fed.R.Civ.P. 17(b) incorporates Florida law regarding the capacity of a minor to sue in federal court. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Under Florida law, a "minor" is any person under age eighteen. *See* Fla. Stat.§1.01(13). As a general rule, minors are
(continued...)

4

County, many of whom have children in the school system. Simon Declaration, Exhibit 26, ¶8. *See also* Balzli Declaration,[5] Exhibit 27.[6]

B. THE INTERESTS SOUGHT TO BE PROTECTED IN THIS LITIGATION ARE GERMANE TO THE ACLU'S PURPOSE.

The protection of First Amendment rights is central to the purpose of the ACLU. In Miami, Florida and nationwide, ACLU affiliates have long represented individuals in First Amendment claims. It was the New York affiliate of the ACLU which represented the plaintiffs in *Board of Education v. Pico*, 457 U.S. 853 (1982). *See generally*: www.aclufl.org (ACLU of Florida website) and www.aclu.org (National ACLU website with links to all state affiliates).

In particular in Miami, the ACLU has been involved in several First Amendment cases raising freedom of expression claims by those affected by the Castro regime in Cuba. Thus, for example, the ACLU, through volunteer cooperating attorneys, brought these cases: *Cuban Museum*

---

[4] (...continued)
bound by a statutory "disability of nonage." Fla. Stat. §743.07(1). One result of this disability is incapacity to sue. *See*, *e.g.*, *Kingsley v. Kingsley*, 623 So.2d 780 (Fla. 5th DCA 1993) (holding that a minor did not have capac*ity to sue for termin*ation of his parents' parental rights). The Federal Rules of Civil Procedure contemplate this possibility and provide for a procedural mechanism for a minor to sue. Fed.R.Civ.P. 17(c)(permitting "next friend" to sue).

[5] Moreover, given the young age (six) of Mr. Balzli's son, Mr. Balzli had intended to check out ¡Vamos a Cuba! from his Miami-Dade elementary school library and read it to his son. Under those circumstances, Mr. Balzli too has been harmed by the School Board's action and has standing in his own right to assert a claim. *Lujan v. Defenders of Wildlife*, 504 U.S. at 560. Although plaintiffs do not believe that it is necessary, they are prepared, and counsel is authorized, to name Mr. Balzli as a plaintiff, individually and as next friend for his son in the event that this Court deems it necessary to establish standing.

[6] Although an allegation that <u>one</u> member has been harmed is sufficient to meet the first prong of the *Hunt* test, Mr. Balzli is not the only parent member of the ACLU of Florida with a child who has been aggrieved by the Miami-Dade County School Board's action. *See* Simon Declaration, Exhibit 26, ¶7.

5

*of Arts and Culture, Inc. v. City of Miami*, 766 F.Supp. 1121 (S.D. Fla. 1991)(challenging City's refusal to renew lease for museum after controversy surrounding the "sale of works that were created either by artists who had not renounced the Castro regime or by artists who had continued to live in a communist Cuba."); *Miami Light Project v. Miami-Dade County*, 97 F.Supp.2d 1174 (S.D. Fla. 2000)(challenging "Cuba Affidavit" that prohibited the County from contracting with parties that do business with Cuba or Cuban nationals); *McKinley v. Kaplan*, 262 F.3d 1146 (11th Cir. 2001)(challenging removal of political appointee for criticizing the "Cuba Affidavit" by stating publicly "[w]hile we respect and appreciate the concerns of Cuban-Americans in the exile community, allowing a few people's political standpoint to dictate the potential economic growth of the area is not for the benefit of the community as a whole."); *Ohanian v. City of Miami*, No. 00-1114 (S.D. Fla.)(Lenard, J.)(successfully challenging City's charge for police services because of demonstrations against presentation of Cuban band Los Van Van at the Miami Arena). The ACLU also represented dozens of Cuban exile organizations in negotiations with the City of Miami in 2001 and 2003 with regard to their right to protest against the inclusion of Cuban musicians in the Latin Grammies which were to be held in Miami. In addition, the ACLU was involved in: *U.S. v. Hernandez, et al.*, No. 98-00721 (S.D. Fla.)(Lenard, J.)(representing José Basulto, Brothers to the Rescue, in challenging gag order which would have prevented him from commemorating the fifth anniversary of the shoot down of unarmed civilian aircraft by the Cuban Air Force in international airspace)(*see U.S. v. Campa*, 419 F.3d 1219, 1232 (11th Cir. 2005)); *Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003)(amicus brief on issue of qualified immunity in case arising out of protests following the seizure of Elían Gonzalez by the federal government).

In Florida, the ACLU routinely represents individuals in First Amendment cases. Recently,

it represented a student in his successful challenge to a state statute that required parental permission to be excused from standing and reciting the pledge of allegiance. *Frazier v. Alexandre*, ___ F.Supp.2d ___, 2006 WL 1528791 (S.D. Fla., May 31, 2006). *See also Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005)(holding state statute prohibiting disclosure of information in a police investigation to violate the First Amendment); *Wyner v. Struhs*, 254 F.Supp.2d 1297 (S.D. Fla. 2003)(requiring state officials to permit display of peace symbol composed of nude human bodies in a state park on First Amendment grounds).

The ACLU of Florida, other state affiliates, and the national ACLU have routinely brought First Amendment cases as an organization representing the interests of its members. *See, e.g.*: *American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486 (11th Cir. 1993)(First Amendment challenge to Bar rule limiting judicial candidate's speech), *McCreary County, Ky v. American Civil Liberties Union of Ky*, ___ U.S. ___, 125 S.Ct. 2722 (2005)(holding posting of Ten Commandments in courthouse violated First Amendment). Similarly, the National ACLU has filed suit as an organization on behalf of its members in key internet censorship cases. *See, e.g.*: *Reno v. American Civil Liberties Union,* 521 U.S. 844 (1997)(holding the Communications Decency Act of 1996, Congress' first attempt to make the Internet safe for minors by criminalizing certain Internet speech, was unconstitutional because it was not narrowly tailored to serve a compelling governmental interest and because less restrictive alternatives were available); *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004)(holding ACLU likely to prevail on merits of claim that Child Online Protection Act violated the First Amendment by burdening adults' access to some protected speech).

The issues at stake in this litigation are central to the ACLU's purpose. The underlying purpose of this second prong of *Hunt*'s associational standing requirement is to ensure "that the

7

association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *United Food and Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. 544, 555-6 (1996). It is clear, given the history of the ACLU and the fervor with which it advocates for civil liberties, particularly the First Amendment, that it will be a vigorous advocate for its members' interests in this litigation.

Thus, the ACLU meets the second prong of the *Hunt* associational standing test.

C. NEITHER THE CLAIMS ASSERTED NOR THE RELIEF REQUESTED REQUIRES THE PARTICIPATION OF INDIVIDUAL MEMBERS IN THIS LAWSUIT.

Plaintiffs seek declaratory and injunctive relief only in this litigation. *See* Complaint (Doc. #1). *See also Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. at 343 (request for declaratory and injunctive relief does not require individualized proof). There are few facts in dispute and a substantial part of the evidence comes from the record before the School Board and school officials. The testimony of individual members is not necessary to the resolution of this case. Whether the banning of the books passes constitutional muster is a matter of law for the court to determine. The ACLU, on behalf of its Miami-Dade County members with children in the public school system, can effectively and efficiently represent its members' interests without participation by the individual members themselves. Moreover, as the Supreme Court has noted, "once an association has satisfied *Hunt*'s first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." *United Food and Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. at 556. "Hence the third prong of the associational standing test is best seen as focusing on ... matters of administrative convenience and efficiency, not on elements of a case and controversy within the

8

meaning of the Constitution."*Id*. at 557. There simply is no need for individual members to be named as plaintiffs in this litigation. The litigation is efficiently brought by the ACLU on behalf of its affected members.

Therefore, the ACLU has standing to bring this action on behalf of its Miami-Dade members who have children in Miami-Dade public schools. *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. at 343; *Warth v. Seldin*, 422 U.S. at 511.

II.   THE MIAMI-DADE SCHOOL STUDENT GOVERNMENT ASSOCIATION HAS STANDING TO BRING THIS ACTION.

Applying the principles set out in *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. at 343, it is clear that the Miami-Dade School Student Government Association also has organizational standing to bring this action on behalf of its members. The Association represents 360,000 students county-wide at all levels of education[7] regardless of their race, gender, ethnic background, religious affiliation, sexual orientation or political views. Declaration of Ronald Bilbao, Exhibit 24, ¶3.

   A.   STUDENT MEMBERS OF THE MIAMI-DADE COUNTY STUDENT GOVERNMENT ASSOCIATION HAVE STANDING IN THEIR OWN RIGHT.

Any student has standing in his or her own right to challenge the Miami-Dade County School Board's action. *See*, *e.g.*, *Board of Education v. Pico*, 457 U.S. 853 (challenge to removal of books from school library brought by high school and junior high school students). *See also*,

---

[7]   All students enrolled in Miami-Dade County Public Schools are automatically members of the Miami-Dade County Student Government Association. *See* Supplemental Declaration of Ronald Bilbao, Exhibit 25, ¶2. *See also* Constitution of the Miami-Dade County Student Government Association, ¶ I.B. (attached to Exhibit 25 as Exhibit A).

*supra* at p. 4 and footnotes 3 and 4. Although the Miami-Dade Student Government Association need only allege harm to one member,[8] several members of the Association have expressed the desire to have access to the books *¡Vamos a Cuba!, A Visit to Cuba*, and other books in the series that was removed by the School Board's June 14, 2006, Final Order. Exhibit 25, ¶3; Exhibit 15.

Thus, this prong of the *Hunt* test is meet as individual members of the Association would have standing to bring this action.

    B.    THE INTERESTS SOUGHT TO BE PROTECTED IN THIS LITIGATION ARE GERMANE TO THE MIAMI-DADE COUNTY STUDENT GOVERNMENT ASSOCIATION'S PURPOSE.

The Miami-Dade School Student Government Association is a student-run organization dedicated to voicing the opinions and addressing the concerns of all students that attend Miami-Dade County Public Schools. Declaration of Ronald Bilbao, Exhibit 24, ¶3. A significant portion of the Association's mission and resources are devoted to protecting and defending the rights of students who attend Miami-Dade County Public Schools, including the First Amendment rights of those students to freely select a wide range of reading materials. *Id*. *See also* Exhibit 25, ¶3. Indeed, a central mission and purpose of the Association is educating students about their rights – including their right to education and to First Amendment freedoms. Exhibit 25, ¶3.

Thus the Association meets the second prong of the *Hunt* organizational standing test.

    C.    NEITHER THE CLAIMS ASSERTED NOR THE RELIEF REQUESTED REQUIRES THE PARTICIPATION OF INDIVIDUAL MEMBERS OF THE ASSOCIATION IN THIS LAWSUIT.

For the same reasons set forth above, *supra* at pp. 8-9, the participation of an

---

[8]    *Warth v. Seldin*, 422 U.S. at 511. Mark Balzli's son, a member of the Miami-Dade Student Government Association, seeks to have access to the books, Exhibit 27, and has therefore been harmed by the challenged Board action.

individual member of the Miami-Dade County Student Government Association is not required in this litigation.

Therefore, the Miami-Dade County Student Government Association has standing to bring this action on behalf of its student members. *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. at 343; *Warth v. Seldin*, 422 U.S. at 511.

III.    CONCLUSION.

For the above reasons, both organizational plaintiffs have standing to pursue this litigation. Should the Court conclude otherwise, and defendants have filed a responsive pleading to the Complaint, plaintiffs request leave to amend for the purpose of naming one or more parents of children in Miami-Dade Public Schools to assert the claims set forth in the Complaint.

Respectfully submitted,

s/ Randall C. Marshall

Randall C. Marshall
Florida Bar No: 181765
Rosalind J. Matos
Florida Bar No: 474967
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard, Suite 340
Miami, FL 33137-3227
rmarshall@aclufl.org
rmatos@aclufl.org
(786) 363-2700
(786) 363-1108 (facsimile)

11

        s/ JoNel Newman

        JoNel Newman
        Florida Bar. No. 112320
        University of Miami School of Law
        1311 Miller Drive
        Coral Gables, FL 33146
        (305) 284-4125
        (305) 284-1588 (facsimile)
        jnewman@law.miami.edu

        Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.

        Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing document was served by hand delivery on July 11, 2006, to all counsel of record on the attached service list.

        s/ Randall C. Marshall

## SERVICE LIST

### Case No. 06-21577 CIV-GOLD/Turnoff

JulieAnn Rico, Esq.
Luis Garcia, Esq.
Office of the Miami-Dade County School Board Attorney
School Board Administration Building, Suite 400
1450 NE 2nd Avenue
Miami, FL  33132
305-995-1412 (facsimile)

Richard J. Ovelmen
Jordan Burt LLP
777 Brickell Avenue, Suite 500
Miami, FL 33131

Attorneys for Defendants Miami-Dade County School Board and Rudolph F. Crew


Randall Marshall, Esq.
Rosalind Matos, Esq.
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard, Suite 340
Miami, FL 33137-3227
rmarshall@aclufl.org
(786) 363-2700
(786) 363-1108 (facsimile)

JoNel Newman, Esq.
University of Miami School of Law
1311 Miller Drive
Coral Gables, FL  33146
(305) 284-4125
(305) 284-1588 (facsimile)
jnewman@law.miami.edu
Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.

Attorneys for Plaintiffs