Case 1:06-cv-21577-ASG  Document 39  Entered on FLSD Docket 07/21/2006  Page 1 of 18  D.C.

ELECTRONIC

Jul 19 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-21577 CIV-GOLD/TURNOFF

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC., GREATER MIAMI CHAPTER; MIAMI-DADE COUNTY STUDENT GOVERNMENT ASSOCIATION; and MARK BALZLI, individually and as next friend to his son, AIDAN BALZLI, <br><br> Plaintiffs, <br><br> v. <br><br> MIAMI-DADE COUNTY SCHOOL BOARD; RUDOLPH F. CREW, in his official capacity as Superintendent of Schools, Miami-Dade County Public Schools, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

PRELIMINARY STATEMENT

1. Plaintiffs challenge the Miami-Dade County School Board's Order to remove a series of children's books, including two about Cuba, from all school libraries within the Miami-Dade County School District. Despite two favorable staff recommendations to retain the books about Cuba and the Superintendent's decision to affirm the staff recommendations, the School Board responded to complaints from members of the community based on the content and viewpoint expressed in the books about Cuba by overruling the decisions of its staff and banning the books about Cuba. The School Board also took the extraordinary step of removing all other books in the

series from all its libraries despite not having received a complaint about those books and without having reviewed the books in its administrative process.

2. Because implementation of the School Board's Order will deprive Plaintiffs of their fundamental rights to freedom of speech and due process guaranteed by the First and Fourteenth Amendments to the United States Constitution, Plaintiffs request that this Court enjoin implementation of the Board's Order and declare the Order unconstitutional and unenforceable. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, and seek relief pursuant to that section, 42 U.S.C. § 1988, and 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 and 65.

## JURISDICTION

3. Plaintiffs' claims arise under the Constitution and laws of the United States. This Court has jurisdiction over their claims pursuant to 28 U.S.C. §§ 1331(a) and 1343(a)(3), and authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 and 65.

## VENUE

4. Venue in the Southern District of Florida is proper pursuant to Title 28 U.S.C. § 1391(e) in that the parties reside in the Southern District of Florida and the events which are the subject of this Complaint occurred in the Southern District of Florida.

## PARTIES

5. The American Civil Liberties Union of Florida, Inc. is a Florida non-profit corporation with its principal place of business in Miami, Florida. The American Civil Liberties Union of Florida, Inc. ("ACLU") is the Florida affiliate of the American Civil Liberties Union; it is a membership organization dedicated to advancing and preserving the constitutional protections found in the Bill of Rights, and in particular, the First Amendment. The Greater Miami Chapter of

2

the ACLU has approximately 3,500 members within the Miami-Dade County School District including many parents of children who attend Miami-Dade County elementary schools, and who want their children to have access to the books the School Board ordered removed from the libraries.

6.  Plaintiff Miami-Dade County Student Government Association is a student-run organization dedicated to voicing the opinions and addressing the concerns of all students that attend Miami-Dade County Public Schools. The Association represents 360,000 students county-wide at all levels of education regardless of their race, gender, ethnic background, religious affiliation, sexual orientation or political views. A significant portion of the Association's mission and resources are devoted to protecting and defending the rights of students who attend Miami-Dade County Public Schools, including the First Amendment rights of those students to freely select a wide range of reading materials.

7.  Plaintiff Mark Balzli is a member of the ACLU and its Greater Miami Chapter. Mr. Balzli has a six year old son, Aidan Balzli, enrolled at North Beach Elementary School in the Miami-Dade County Public School System. Before the Miami-Dade County School Board's Order at issue in this case, ¡Vamos a Cuba! was part of the library collection at North Beach Elementary School. Mr. Balzli desires to check the book out to read it together with his son. Mr. Balzli sues on behalf of himself and as next friend of his son.

8.  The Miami-Dade County School District is a public entity created by Fla. Stat. § 1001.30. The District is governed by the Miami-Dade County School Board ("School Board"), which is subject to suit pursuant to Fla. Stat. § 1001.41. The School Board is responsible, pursuant to § 1001.42 of the Florida Statutes, for the establishment, organization and operation of all public schools within Miami-Dade County. It further exercises administrative rulemaking authority pursuant to § 120.536(1) and 120.54 of the Florida Statutes. At all times relevant to this Complaint,

defendant Miami-Dade County School Board was acting under color of state law and pursuant to custom, policy and practice.

9. Defendant Rudolph F. Crew is the Superintendent of Schools for Miami-Dade County. He is designated by School Board Rule 6Gx13-2A-1.02 as the executive agent of the School Board and chief administrative officer of the school system. He is responsible for carrying out School Board orders and directives, including the Order at issue in this case. He is sued in his official capacity.

## STATEMENT OF FACTS

10. The process for selecting materials for public school libraries in Miami-Dade County is governed by Miami-Dade County School Board Rule 6Gx13-6A-1.26. Section III of that Rule requires that a "wide choice" and "comprehensive collection" of materials "in all areas of knowledge" be available in the library media centers of the public schools. Section IV of Rule 6Gx13-6A-1.26 sets forth 15 criteria for teachers, library media specialists and administrators to apply in evaluating library materials, including, *inter alia*, educational significance, appropriateness as to age, maturity, interest and learning levels and accuracy. With the exception of "hard-core pornography or [materials] otherwise prohibited by Section 847.012, F.S." no potential library materials are explicitly banned by the Rule.

11. In addition to the School Board Rule, educational personnel have described the process for purchasing library books as follows:

> • Library media specialists create collection development policies in an effort to build comprehensive collections that contain a wide range of materials and allow for varying interests. Books and other library materials are considered for purchase not solely because they tie to the curriculum, but because they allow students to discover areas of interest, represent a broad diversity of points of view and subject matter, and stimulate recreational reading, listening and viewing skills. School Board Rule 6Gx13-6A-1.14 states that students have the right to study controversial topics.

> Therefore, library collections may also include some materials that may be considered controversial.
>
> • Library media specialists use nationally recognized, professional review sources to help them make purchasing decisions. Because of the magnitude of books published every year, it is impossible for library media specialists and other school staff members to read every book that is considered for purchase. Using reviews is not specific to M-DCPS as library media specialists and public librarians nation-wide use reviews as a basis for collection development. Below are some of the most widely used and nationally recognized sources of book reviews and recommended titles used in the district:
>   - *Booklist*
>   - *Children's Catalog*
>   - *Middle and Junior High School Library Catalog*
>   - *High School Library Catalog*
>   - *School Library Journal*
>   - *Library Journal*
>   - *Book Links*
>   - *Horn Book*
>   - *Criticas*
>   - American Library Association (ALA)
>   - American Association of School Librarians (AASL)
>   - Association for Library Service to Children
>   - Newberry Award Winners
>   - Caldecott Medals Winners
>   - Coretta Scott King Book Award Winners
>   - Best Books for Young Adults
>   - Notable Children's Books List

Notes on Purchasing Library Books, produced Miami-Dade County Public Schools.

12. Applying the standards expressed above, Miami-Dade County Public Schools personnel in 33 public elementary and middle schools obtained 49 copies of the book *¡Vamos a Cuba!* or its English language version entitled *A Visit to Cuba* in from 2001 to 2006. The books are part of a series of children's picture books called the "A Visit To" series published by Heinemann Library for children. The books are designed to provide basic information about what it's like to be a child in several countries for 5 to 7 year old readers. The English language series – of which *A Visit to Cuba* is part -- covers twenty countries: Australia, Brazil, Cambodia, China, Colombia,

5

Costa Rica, Cuba, Egypt, France, Germany, Greece, India, Ireland, Israel, Italy, Japan, Mexico, Puerto Rico, The United Kingdom and Vietnam. The Spanish language series, of which *¡Vamos a Cuba!* is part, covers four countries: Columbia, Cuba, Costa Rica and Puerto Rico.

13. Students who attend any of the 33 middle and elementary schools with a copy of the book in the library media center have ready access to the book. In addition, students who attend any other Miami-Dade County Public School have the book available to them through the inter-library system loan program.

14. The books *¡Vamos a Cuba!* and *A Visit to Cuba* are included in the titles of quizzes available through the national Accelerated Reader and Reading Counts reading motivation programs used in Miami-Dade County Public Schools. In addition to the 49 copies of the books owned by Miami-Dade County Public Schools, over 159 copies of the books are owned and in circulation in other Florida public school libraries. The books have received favorable reviews from nationally-recognized children's book review publications, including the *School Library Journal, Criticas*, *Booklist* and *Publishers Weekly*.

15. On April 4, 2006, a parent of a student at Marjory Stoneman Douglas Elementary School filed a formal complaint pursuant to School Board Rule 6Gx13-6A-1.26 Section VIII requesting that *¡Vamos a Cuba!* be removed from the "total school environment." In response to the complaint form question, "To what do you object? *(Please be specific; cite pages or sections.)*", the parent responded: "The contents and photographs of the book." In response to the complaint form question, "Why do you object to this material?" the parent responded: "As a former political prisoner from Cuba, I find the material to be untruthful. It portrays a life in Cuba that does not exist."

16. In response to this formal complaint, Miami-Dade County Public Schools personnel

followed the procedures outlined in School Board Rule 6Gx13-6A-1.26 Section VIII and convened an Ad Hoc School Materials Review Committee ("SMRC") to review the complaint, the book, the reviews of the book and the 15 evaluative criteria set forth in Section IV of the Rule.  The SMRC consisted of a panel of eight elementary school educators, librarians, administrators and a representative of the parent teacher student group.  On April 17, 2006 the SMRC voted, 7 to 1, in favor of retaining the book in the library.  Six of the SMRC members expressly noted that they found the book to be apolitical in tone and content.  All eight SMRC members found the book educationally significant and developmentally appropriate.

17. On April 17 Plaintiff ACLU sent a letter to the School Board's attorney expressing concern about the First Amendment implications of removing books from the school libraries.

18. Despite the ongoing review and appeal process required by School Board Rule 6Gx13-6A-1.26, at the School Board's meeting on April 18, 2006, School Board member Frank J. Bolaños introduced the following subject for action at the Board's meeting:

> **PROTECTING OUR CHILDREN FROM THE HURTFUL & INSULTING DISTORTIONS OF THE BOOK "VAMOS A CUBA" BY REMOVING THESE BOOKS FROM ALL OF OUR PUBLIC SCHOOL LIBRARIES.**

Revised Agenda Item B-19, April 18, 2006.

19. Mr. Bolaños characterized his objections to the book as follows:

> This book is hurtful and insulting to both our Cuban-American community and those Cubans still living on the island under oppressive conditions.
>
> Here are just a few of the book's passages, its distortions and the reality that Cubans in exile have lived and those in Cuba are still subjected to:
>
> > • **Book's distortion:** "The people of Cuba eat, work and study like you," page 5.
> > **Reality:** Nothing could be further from the truth.  The people of Cuba survive without civil liberties and due process under the law and receive 10 to 20 year prison sentences for simply writing a document or voicing an

7

opinion contrary to the party line. People are told where to work. They lose their job if they do not follow the dictates of the communist party. Children are indoctrinated and forced to chant Castro's greatness in class.
- **Book's distortion:** "White rice is the most common food in Cuba. Black beans are eaten. Arroz con Pollo is another favorite dish," page 12.
**Reality:** Food is rationed; people stand in line for hours to ask for their measly ration only to be told they ran out. Children stop receiving their milk ration at age six.
- **Book's distortion:** "The major celebration in Cuba is 'Carnival.' It is celebrated on July 26th," page 26.
**Reality:** The annual commemoration of July 26th is the symbolic observation of the rise to power of Castro's communist, totalitarian regime. It is a day of mourning for most Cubans. Cubans celebrate the 20th of May and the 28th of January, to celebrate their independence from Spain and the birth of Jose Marti, Cuba's greatest national hero.
- **Book's distortion:** "The celebrations in Cuba are a mix of African and Catholic roots," page 27.
**Reality:** Historically, Castro's regime has prohibited or chastised those that engage in religious practices, including the Catholic Church and other organized forms of religion. Religious leaders, including Jehovah's Witnesses have been imprisoned. A famous cry while facing Castro's firing squad was "Viva Cristo el Rey" (long live Christ the King).

Revised Agenda Item B-19, April 18, 2006.

20.     The ensuing School Board testimony and debate was characterized by repeated references to political issues and viewpoints and was sharply critical of the book for omitting negative political information about the Castro regime from its contents. One School Board member compared the book to "pornography" and "books about devil worship," which she said had no place in school libraries. After lengthy and heated debate, the Board decided to let its administrative process continue as to the challenged book.

21.     Consequently, on April 19th, the Ad Hoc School Materials Review Committee transmitted its recommendation to the school principal that *¡Vamos a Cuba!* maintain its current status as part of the collection of titles available in the Media Center at Marjory Stoneman Douglas Elementary School.

8

22. Dr. Manuel Barreiro, Principal of Marjory Stoneman Douglas Elementary School informed the Regional Superintendent and the complaining parent of this decision on April 21, 2006.

23. That same day, the complaining parent exercised his right to file a formal appeal with the School District pursuant to School Board Rule 6Gx13-<u>6A-1.26</u> Section VIII. Superintendent of Schools, Rudolph F. Crew, then convened a 17 member ad hoc District Materials Review Committee ("DMRC") to consider the appeal.

24. The DMRC appointed by Superintendent Crew consisted of the Deputy Superintendent for Curriculum, two elementary school principals, the Administrative Directors for Library Media Services and the Division of Social Sciences, the Instructional Supervisors for the Division of Language Arts and for Library and Media Services, the Supervisor for Instructional Materials and Textbook Services, an elementary school reading coach, two Library Media Specialists, one student, a representative of the United Teachers of Dade, a representative from the Dade County Council of Parent-Teacher/Parent-Teacher-Student Associations, a member of the Florida House of Representatives and the President of the Spanish-American League Against Discrimination.

25. The DMRC met on two occasions to consider the appeal, on May 22 and June 5, 2006. The DMRC reviewed both the Spanish and English versions of the book, *¡Vamos a Cuba!* and *A Visit to Cuba,* all 15 evaluation criteria expressed in Rule 6Gx13-<u>6A-1.26</u> Section IV, notes and reviews for the book, *¡Vamos a Cuba!* and materials presented by the complainant questioning the accuracy of the statements in *¡Vamos a Cuba!*. The DMRC

> voted to focus the discussion on the following five criteria: educational significance, appropriateness, accuracy, scope, and special features. Each of the foregoing areas was discussed in detail, and committee members were given the opportunity to comment on each page of the book in terms of the criteria set forth in the Board Rule.

> There was much discussion regarding the accuracy of the books, the sensitivity of the topic in regard to the community, and the differences between the English and Spanish text. Much of the dialogue focused on accuracy versus omissions, with the debate centering on the issue of missing facts versus how much and what type of information are meant to be contained in the book for very young children.

Memorandum from Antoinette Dunbar to Rudolph F. Crew, June 7, 2006. The DMRC voted 15 to 1 to maintain both books in the Marjory Stoneman Douglas Elementary School library.[1]

26.   On June 7, 2006 the Superintendent of Schools affirmed the recommendation of the DMRC. That same day, the School Board Attorney issued an Opinion advising the School Board, in pertinent part:

> The DMRC merely reviewed the decision of the SMRC and the complaint of a parent from one school requesting that the book be removed from his child's school library. There is no provision in the Rule for a district-wide removal of a school library book stemming from a DMRC review. Although the Rule does not prohibit the Board from making a decision affecting the District as a whole, such District-wide impact would be more susceptible to legal challenge because the Rule apparently contemplates independent school-by-school decisions regarding books….
> [I]t is important for the Board to carefully and thoughtfully consider the recommendations of the DMRC and Superintendent. The Board should be careful to state its legitimate, constitutionally-sound reasons for its decision and the reasons for deviation from the DMRC and Superintendent's recommendations ….The Board's decision should be memorialized in a formal order, which would be rendered by filing with the Clerk of the School Board. The order should contain the Board's findings and conclusions showing the rationale for the Board's decision….
> [I]t is our opinion that deviation from the DMRC's decision, especially in light of the extensive analysis and deliberations by the DMRC, would most likely subject such a decision by the Board to a legal challenge…. [I]t is exceedingly important that the Board identify with specificity the legal grounds for any Board decision, particularly any decision that deviates from the DMRC's recommendations. Moreover, it is our opinion that even a well reasoned decision by the Board that deviates from DMRC's recommendations will expose the Board to liability.

Supplemental Opinion on the Book Review and Removal Process Under Board Rule 6Gx13-<u>6A-1.26</u>, June 7, 2006.

---

[1] One of the 17 DMRC members, State Representative David Rivera, resigned from the group prior to the vote.

10

27. On June 7, 2006 School Board Member Frank J. Bolaños submitted another proposal regarding *¡Vamos a Cuba!* for the School Board's consideration. This one was entitled:

**TEACHING OUR CHILDREN THE TRUTH ABOUT CUBA BY REMOVING THE BOOK "VAMOS A CUBA" FROM ALL OF OUR PUBLIC SCHOOL LIBRARIES & REPLACING THEM WITH HISTORICALLY ACCURATE & EDUCATIONALLY RELEVANT BOOKS**

The proposal states that "[t]his book and its errors of commission and omission should not remain in the hands and minds of innocent five to nine year old children." Replacement Agenda Item B-13 (June 7, 2006).

28. On June 8, the complaining parent filed a formal appeal with the Clerk of the School Board of Miami Dade County and requested that the School Board render a decision on his appeal at its June 14th School Board meeting. The Superintendent of Schools and the School Board Attorney prepared Agenda Item G-3 for the Board's consideration recommending that the School Board upon review of the record of the proceedings either affirm or reject the Superintendent's recommendation and make specific findings and conclusions in support of the Board's decision.

29. On June 13, Plaintiff ACLU again wrote to the School Board requesting that the Board follow the First Amendment and suggested that the Board purchase more books on Cuba, with different perspectives, rather than give license to censorship.

30. On June 14, 2006 the School Board considered Items G-3 and B-13. Despite the requests of its counsel and Plaintiff ACLU, the School Board rejected the Superintendent's decision affirming two review committees. The School Board ordered the removal of *¡Vamos a Cuba!* and *A Visit to Cuba,* from the Marjory Stoneman Douglas Elementary School and all other public schools in the District. The Board also took the extraordinary step of ordering the removal of all the books in the series of which *¡Vamos a Cuba!* and *A Visit to Cuba* are part, from all public school

libraries in the District despite the fact that those books had never been reviewed by staff and had not been the subject of any complaint. The School Board's Order states in its entirety:

> Upon a review of the complete Record of the proceedings below, including the transcript of the proceedings on Board Agenda Item G-3 (incorporated herein by reference and attached hereto, and made a part of this Final Order), the Superintendent's recommendation sustaining the District Materials Review Committee's decision is hereby rejected. The foregoing is based upon the findings reflected by the record of these proceedings, and more specifically the finding that the book is inaccurate and contains several omissions. It is further ordered that this book and the series it is part of, be replaced, throughout the school district, with a more accurate set of books that is more representative of actual life in these countries.

Final Order of the School Board of Miami-Dade County, Florida, June 14, 2006. The School Board's meeting minutes reflect that the Board resolved to "***immediately*** replace [all the books in the series] with updated books that are more actual to real life in these countries." Unofficial Meeting Minutes of the June 14, 2006 Board Meeting, Agenda Item G-3, available at: http://pdfs.dadeschools.net/Bdarch/2006/Bd061406/lastbda.asp (emphasis supplied).

31.     The School Board's decision contains no specific findings regarding the books ordered removed. The entire record of the proceedings before the School Board, on which it relies in support of its decision, reflects numerous instances of an overt political agenda in considering the book selection issue, viewpoint discrimination and, as Superintendent Crew described, "disturbing signals of intolerance." May 22, 2006 Memorandum from Rudolph F. Crew to Antoinette Dunbar, Deputy Superintendent. For example, in debating the matter the School Board Chairman repeatedly mentioned that, as a member of the Cuban community he found the book "offensive." Another Board member characterized her position on the book as standing "firmly with the Cuban-American community." Several Board members criticized the book for "omitting" negative information about the Castro regime.

32. Plaintiffs are informed and believe, and on that basis allege, that the books will be removed from the libraries throughout the Miami-Dade County Public Schools "immediately" and in advance of August 14, 2006 when the public schools open for the 2006-2007 academic year.

33. Plaintiffs have no adequate remedy at law because denial of plaintiffs' fundamental constitutional rights protected by the First and Fourteenth Amendments cannot be remedied by legal relief.  Unless enjoined by the Court, the School Board will remove the books in question from all its school libraries, denying all students access to the books in the libraries throughout the District and causing plaintiffs immediate and substantial harm.

CLAIMS FOR RELIEF

### Count One – Violation of First and Fourteenth Amendments, 42 U.S.C. § 1983
### (Freedom of Speech)

34. Paragraphs 1 – 33 are repeated and realleged in this Count the same as though pleaded in full.

35. Plaintiffs' First Amendment rights are guaranteed against infringement by state and local government officials by the Due Process Clause of the Fourteenth Amendment.  Plaintiffs have a right to seek redress for violations of those rights under 42 U.S.C. § 1983.

36. The School Board's Order directing that the books *¡Vamos a Cuba!* and *A Visit to Cuba* be removed from all libraries within the Miami-Dade County Public School system violates the Plaintiffs' First Amendment right to access to information. The Order further violates Plaintiffs' First Amendment rights because the removal decision was motivated by School Board and community disapproval of the content of the books.

### Count Two – Violation of First and Fourteenth Amendments, 42 U.S.C. § 1983
### (Freedom of Speech)

37. Paragraphs 1 - 33 are repeated and realleged in this Count the same as though pleaded in full.

38. The School Board's Order directing that the books *¡Vamos a Cuba!* and *A Visit to Cuba* be removed from all libraries within the Miami-Dade County Public School system violates the plaintiffs' First Amendment rights because the Order is not content and viewpoint neutral.

### Count Three – Violation of First and Fourteenth Amendments, 42 U.S.C. § 1983
### (Due Process of Law)

39. Paragraphs 1 - 33 are repeated and realleged in this Count the same as though pleaded in full.

40. Any state or local governmental regulation that infringes First Amendment rights must be subject to careful observance of due process standards and procedures pursuant to the Due Process Clause of the Fourteenth Amendment. Plaintiffs have a right to seek redress for violation of such due process rights under 42 U.S.C. § 1983.

41. The School Board's Order directs that *all* copies of *¡Vamos a Cuba!* and *A Visit to Cuba* be removed from *all* school libraries within the Miami-Dade County Public School system. The portion of the Order that addresses school libraries other than Marjorie Stoneman Douglas Elementary School violates the Plaintiffs' First and Fourteenth Amendment rights to due process of law in that the other school libraries were not the subject of the complaint and the School Board's review and appeal process and the School Board failed to follow its own procedure by banning the books from *all* its libraries.

**Count Four – Violation of First and Fourteenth Amendments, 42 U.S.C. § 1983**
**(Freedom of Speech and Due Process of Law)**

42. Paragraphs 1 - 33 are repeated and realleged in this Count the same as though pleaded in full.

43. The School Board's Order directing that all twenty-four books in the "A Visit To" series that includes *¡Vamos a Cuba!* and *A Visit to Cuba* be removed from all libraries within the Miami-Dade County Public School system violates the Plaintiffs' First Amendment right to access to information.

44. To the extent that the Order is directed to the 22 books in the series other than *¡Vamos a Cuba!* and *A Visit to Cuba,* the Order violates Plaintiffs' First and Fourteenth Amendment rights to due process of law in that none of the other books in the series were the subject of complaint and the School Board's review and appeal process, and, as set forth above, the process properly applied only to the Marjorie Stoneman Douglas Elementary School Library.

45. The Order further violates the Plaintiffs' First and Fourteenth Amendments because removal of all the books in the series is substantially overbroad and not the least restrictive means of accomplishing any compelling governmental purpose.

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assume jurisdiction over this case;

2. Declare that the School Board's Order of June 14, 2006 violates Plaintiffs' rights as protected by the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983;

3. Enjoin Defendant Miami-Dade County School Board, and Defendant Rudolph F. Crew, his agents, successors and assigns from enforcing the June 14 Order and from removing the books in question;

4. Award Plaintiffs their reasonable attorneys' fees and costs in bringing this action pursuant to 42 U.S.C. § 1988; and

5. Award Plaintiffs such further relief as may be just and proper.

Respectfully submitted,

s/ JoNel Newman

JoNel Newman
Florida Bar. No. 112320
University of Miami School of Law
1311 Miller Drive
Coral Gables, FL 33146
(305) 284-4125
(305) 284-1588 (facsimile)
jnewman@law.miami.edu

Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.

s/ Randall C. Marshall

Randall C. Marshall
Florida Bar No: 181765
Rosalind J. Matos
Florida Bar No: 474967
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard, Suite 340
Miami, FL 33137-3227
rmarshall@aclufl.org
rmatos@aclufl.org
(786) 363-2700
(786) 363-1108 (facsimile)

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing document was served by e-mail, per agreement of the parties, on July 19, 2006, to all counsel of record on the attached service list.

/s Randall C. Marshall

## SERVICE LIST

### Case No. 06-21577 CIV-GOLD/Turnoff

JulieAnn Rico, Esq.
Luis Garcia, Esq.
Office of the Miami-Dade County School Board Attorney
School Board Administration Building, Suite 400
1450 NE 2nd Avenue
Miami, FL  33132
LMGarcia2@dadeschools.net

Richard J. Ovelmen
Jordan Burt LLP
777 Brickell Avenue, Suite 500
Miami, FL 33131
rjo@jordenusa.com

Attorneys for Defendants Miami-Dade County School Board and Rudolph F. Crew


Randall Marshall, Esq.
Rosalind Matos, Esq.
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard, Suite 340
Miami, FL 33137-3227
rmarshall@aclufl.org
(786) 363-2700
(786) 363-1108 (facsimile)

JoNel Newman, Esq.
University of Miami School of Law
1311 Miller Drive
Coral Gables, FL  33146
(305) 284-4125
(305) 284-1588 (facsimile)
jnewman@law.miami.edu
Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.

Attorneys for Plaintiffs